BENJAMIN HARTLEY, A MINOR, BY AND THROUGH HIS MOTHER
AND NEXT FRIEND, CATHERINE HARTLEY, APPELLEE, V. LANETTE
M. GUTHMANN, M.D., AND PHYSICIANS CLINIC, P.C.,
APPELLANTS.

532 N.W.2d 331

Filed June 2, 1995.   No. S-93-546.

William M. Lamson, Jr., and Raymond E. Walden, of
Kennedy, Holland, DeLacy & Svoboda, for appellants.

Joseph B. Muller, of Law Offices of Ronald J. Palagi, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

FAHRNBRUCH, J.

Benjamin Hartley, a minor, by and through his mother and next friend unsuccessfully sued Lanette M. Guthmann, M.D., and Physicians Clinic, P.C., for permanent and severe brain damage and other personal injuries he allegedly sustained during his birth on January 11, 1988.

Based upon what it found to be juror misconduct, the district court for Douglas County granted Hartley's motion for new trial. Citing various reasons, Guthmann and Physicians Clinic appealed that order.

We affirm the district court's order granting Hartley a new trial.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993); *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993).

A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Wolfe, supra*. The discretion of a trial court in ruling on a motion for new trial is only the power to apply the statutes and legal principles to all facts of the case; a new trial may be granted only where legal cause exists. *Id*. A trial court may not grant a new trial merely because it would reach a different result than did the jury. *Id*.

When the granting of a new trial requires a consideration of conflicting evidence, the findings of the trial court thereon will not ordinarily be disturbed on appeal. *Kremlacek v. Sedlacek*, 190 Neb. 460, 209 N.W.2d 149 (1973).

## FACTS

On January 11, 1988, Benjamin Hartley's mother, Catherine Hartley, was admitted to Omaha's Nebraska Methodist Hospital

by Dr. Guthmann, who is affiliated with Physicians Clinic. At 9:12 p.m. on that day, Benjamin Hartley was delivered by Dr. Guthmann in a midforceps vaginal delivery. Hartley alleged that Dr. Guthmann used the forceps for a period of 27 minutes. Hartley also alleged that he was depressed, meaning he was less responsive than normal to stimulation being applied in the course of care after birth. Hartley required resuscitation before he was taken to the neonatal intensive care unit.

Hartley further alleged that he suffered permanent and severe brain damage and other personal injuries as a result of negligence on the part of Guthmann and Physicians Clinic (collectively Guthmann).

On November 16, 1992, Hartley's trial began. The case was submitted to the jury on December 4. On December 8, the jury rendered a 10 to 2 verdict in favor of Guthmann.

On December 17, Hartley filed a motion for new trial based, inter alia, on jury misconduct. At a hearing on the motion, Hartley submitted affidavits of three jurors stating that a juror had taken a brochure into the jury room. Two of the affidavits, exhibits 120 and 121, stated that "the brochure dealt with smoking and its effects." The third affidavit, exhibit 122, stated that "the brochure dealt with smoking during pregnancy and its effects on the fetus." Exhibit 120 and 122 also contained statements that the juror who had taken the brochure into the jury room had "argued repeatedly that smoking was a factor in the child's injuries." The three affidavits were received into evidence over Guthmann's objection. The brochure was not offered into evidence at trial or at the hearing on Hartley's motion for a new trial.

Guthmann submitted six affidavits from jurors, exhibits 131 through 133 and 135 through 137, containing statements that a juror had taken into the jury room a brochure which the juror said pertained to the effects of smoking and that the juror was immediately admonished by the other jurors to put the brochure away, which the juror did. A seventh affidavit offered by Guthmann, exhibit 134, contained a statement by a juror that he was not aware of any brochure being taken into the jury room. These seven affidavits also contained statements that these jurors were not aware of the contents of the brochure.

Exhibits 123 through 129 are affidavits from the same jurors in exhibits 131 through 137. Exhibits 123 through 129 contain statements that the brochure played no part or factor in the jurors' deliberations. They were not received in evidence.

The supplemental bill of exceptions before the court does not reveal any testimony at trial regarding the effects of smoking on fetal development. It contains only Guthmann's opening and closing arguments; the testimony of Dr. Paul Goodrich, a defense witness; and a conference outside the jury's presence regarding proposed jury instructions. Testimony of other witnesses is not included in the record before us.

At the hearing on Hartley's motion for new trial, the juror who took the brochure into the jury room was not called to testify, nor was an affidavit of that juror offered in evidence.

On May 25, 1993, the trial court granted Hartley's motion for new trial. The trial court found that the brochure, which was not offered into evidence, "obviously was read by the juror who brought it in to the jury room and that the subject of the brochure was brought to the attention of some of the other jurors." The trial court further found that the issue of the harmful effects of smoking did relate to the injuries claimed by Hartley.

Originally, Guthmann appealed the district court's order to the Nebraska Court of Appeals. Pursuant to our authority to regulate the caseloads of the appellate courts, this case was removed to this court's docket.

## ASSIGNMENTS OF ERROR

Summarized and restated, Guthmann claims that the trial court abused its discretion in (1) admitting into evidence and relying upon portions of juror affidavits describing statements by another juror during deliberations while rejecting other juror affidavits stating that the jury did not consider the brochure during deliberations, (2) finding that extraneous material or information which related to an issue submitted to the jury came to the attention of a juror, (3) finding that there is a reasonable possibility that extraneous material or information affected the verdict to Hartley's detriment, and (4) granting the motion for new trial.

## ANALYSIS

In order for a new trial to be granted due to juror misconduct, the party claiming the misconduct has the burden to show by clear and convincing evidence that prejudice has occurred. *Hunt v. Methodist Hosp.*, 240 Neb. 838, 485 N.W.2d 737 (1992). In a motion for new trial, allegation of misconduct by jurors must be substantiated by competent evidence. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993).

Extraneous material or information considered by a jury may be deemed prejudicial without proof of actual prejudice if the material or information relates to an issue submitted to the jury and there is a reasonable possibility that the extraneous material or information affected the verdict to the litigant's detriment. *Nichols, supra; Loving v. Baker's Supermarkets*, 238 Neb. 727, 472 N.W.2d 695 (1991).

Hartley's allegations of juror misconduct were based upon affidavits from three jurors. In Guthmann's first assignment of error, Guthmann argues that the trial court abused its discretion in admitting into evidence portions of juror affidavits describing statements made by another juror during deliberations, while rejecting juror affidavits stating that the jury did not consider any brochure in their deliberations.

The use of juror affidavits to inquire into the validity of a verdict is controlled by Neb. Rev. Stat. § 27-606(2) (Reissue 1989), which provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

(Emphasis supplied.)

This court has previously addressed the limitations § 27-606(2) places upon inquiries into the validity of jury verdicts. In *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987), this court held that § 27-606(2) permits use of a juror's affidavit to establish that the jury considered prejudicial information coming from a source other than the evidence presented at trial. However, we further held that § 27-606(2) prohibits the use of a juror's affidavit to impeach a verdict on the basis of jury motives, methods, misunderstanding, thought processes, or *discussions during deliberations* which enter into the verdict. *Rahmig, supra.*

The record reflects that exhibits 120 and 122 were affidavits which contained statements from two jurors that the juror who brought a brochure into the jury room "argued repeatedly that smoking was a factor in the child's injuries." Section 27-606(2) prohibits the use of a juror's affidavit to impeach a verdict on the basis of jury discussions during deliberations which enter into the verdict. Thus, the trial court erred in receiving into evidence portions of these affidavits relating a juror's discussion during deliberations.

The record shows that exhibits 123 through 129 were affidavits containing statements from jurors relating to whether the brochure played a part in the jury's deliberations or verdicts. The trial court properly refused to receive these affidavits into evidence.

In her second assignment of error, Guthmann contends that the trial court abused its discretion in finding that extraneous material or information which related to an issue submitted to the jury came to the attention of any juror.

The brochure was extraneous information inasmuch as it was never received in evidence and should not have been in the jury room. Some of the affidavits received in evidence reveal that several of the jurors were aware of the presence of the brochure in the jury room.

There are conflicting statements as to the extent the jurors were aware of the contents of the brochure and when the brochure was produced. In the affidavits offered by Guthmann, several jurors state that they were unaware of the contents of the brochure. In the same affidavits, the jurors state that they were

told the brochure pertained to smoking. Although portions of two of the affidavits submitted by Hartley violate § 27–606(2), the affidavits contained in exhibits 120 and 122 were admissible, but only to show that a juror brought a brochure into the jury room. Exhibit 120 contains a juror statement that the "brochure dealt with smoking and its effects." Exhibit 122 contains a juror statement that the "brochure dealt with smoking during pregnancy and its effects on the fetus." These statements are admissible to show that extraneous information was improperly brought to the attention of the jury. Section 27–606(2) enables the parties to introduce evidence that improper information came to the attention of the jury.

Seven of the jurors' affidavits state that the juror who produced the brochure did so during the course of deliberations. The affidavits contained in exhibits 135 and 136 state that when the brochure was produced, the door to the jury room had not been closed and deliberation had not yet begun. Exhibit 134 contains an affidavit stating that no brochure on the harmful effects of smoking was ever present in the jury room during the course of deliberations.

The record reflects that the most detailed description of the contents of the brochure was that it "dealt with smoking during pregnancy and its effects on the fetus." The present case concerns allegations of negligence on the part of Guthmann and whether the alleged negligence caused the various personal injuries claimed by Hartley. The issue of the effects of smoking on the fetus does relate to the issue of causation which was submitted to the jury in this medical malpractice action.

In this case, after reviewing the conflicting evidence, the trial court properly found that the subject of the brochure was brought to the attention of some of the jurors and that the issue of the harmful effects of smoking did relate to the injuries claimed by Hartley. Guthmann's second assignment of error is without merit.

In the third assignment of error, Guthmann claims that the trial court abused its discretion in finding that there is a reasonable possibility that the extraneous material or information affected the verdict to Hartley's detriment. As we stated earlier, the party claiming juror misconduct has the

burden to show by clear and convincing evidence that prejudice has occurred. However, § 27–606(2) makes it impossible to use direct evidence to show prejudice because it excludes the consideration of jurors' testimony or affidavits concerning the jurors' motives, methods, misunderstanding, thought processes, or discussions in reaching a verdict.

This court has resolved the prejudice issue by holding that prejudice from jury misconduct in considering extraneous information, as a ground for setting aside a verdict, may be inferentially established. See *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983). We now turn to whether there is a reasonable possibility that the brochure affected the verdict to Hartley's detriment.

In the present case, the evidence properly before the trial court shows that some of the members of the jury were aware of the subject contained in the brochure. The record also contains evidence that the subject of the brochure taken into the jury room related to smoking during pregnancy and its effects on the fetus. The supplemental bill of exceptions before this court does not provide us with all of the testimony that occurred at trial. However, the record of a conference between the attorneys and the court outside the presence of the jury contains innuendo concerning the issue of tobacco use being raised during the trial. The record shows that Hartley objected to Guthmann's interjection of use of tobacco in the case.

The brochure reinforces the issue of tobacco use and raises the possibility that smoking may have been one of the causes of Hartley's brain damage. The issue of causation is at the center of this lawsuit. The jury rendered a 10 to 2 verdict in favor of Guthmann. The competent evidence in this record establishes that there exists a reasonable possibility that the brochure combined with the interjection of tobacco use during the trial affected the jury's verdict to Hartley's detriment. Guthmann's third assignment of error is meritless.

Finally, we turn to the fourth assignment of error, in which Guthmann contends that the trial court abused its discretion in granting Hartley's motion for new trial based upon jury misconduct. Having found that the properly admitted evidence does support a finding that there was a reasonable possibility

that extraneous prejudicial material or information came to the attention of the jury, we conclude that the trial court did not abuse its discretion in granting Hartley's motion for new trial.

Therefore, the trial court order granting a new trial is affirmed.

AFFIRMED.